**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

B AND T SUPPLIES, INC. d/b/a B AND T SUPPLY d/b/a BIGGEST BOOK.COM, *et al., individually and on behalf of those similarly situated*,

Plaintiffs,

-v-

AG MORGAN TAX & ACCOUNTING LLC, *et al*.,

Defendants.

---------------------------------------------------------------------X

Case No. 1:23-11241-GHW-BCM

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY .......................... 1**

**II. LEGAL STANDARD ................................................................................ 3**

**III. ARGUMENT ........................................................................................ 4**

**A. Plaintiffs' RICO Claims Are Barred by the Statute of Limitations ..................... 4**

**B. The PSLRA Bars the Plaintiffs' RICO Claims ...................................................... 7**

**C. Plaintiffs Have Failed to Allege Predicate RICO Acts ........................................ 10**

1. The MCA Agreements are bona fide sales of accounts receivable ...................... 10

2. Even if construed as loans, the MCA Agreements do not violate applicable usury laws ........................................................................................................ 12

**D. Plaintiffs' RICO Claims Are Barred by *Rooker-Feldman* Doctrine .................. 16**

**E. Plaintiffs' RICO Claims Are Barred by the Doctrine of *Res Judicata* ............... 18**

**IV. CONCLUSION ................................................................................... 19**

# TABLE OF AUTHORITIES

## Cases

*All Purpose Fin. Corp. v. D'Andrea*,
235 A.2d 808 (Pa. 1967) .................... 13

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
607 F. Supp. 2d 500 (S.D.N.Y. 2009) .................... 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .................... 3

*Bald Eagle Area Sch. Dist. v. Keystone Fin. Inc.*,
189 F.3d 321 (3d Cir. 1999) .................... 9

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) .................... 3, 10

*Berlin v. Jetblue Airways Corp.*,
436 F. Supp. 3d 550 (S.D.N.Y. 2020) .................... 11

*BMR & Assocs., LLP v. SFW Cap. Partners, LLC*,
92 F. Supp. 3d 128 (S.D.N.Y. 2015) .................... 15

*Broccoli v. Ashworth*,
2024 WL 1199549 (S.D.N.Y. Mar. 20, 2024) .................... 5, 6

*Burgos v. Hopkins*,
14 F.3d 787 (2d Cir. 1994) .................... 18

*Burke v. Verizon Commc'ns, Inc.*,
2019 WL 13146782 (S.D.N.Y. Mar. 29, 2019) .................... 12

*Canfield v. Elmer E. Harris & Co.*,
252 N.Y. 502 (N.Y. 1930) .................... 16, 18

*Chambers v. Time Warner, Inc.*,
282 F.3d 147 (2d Cir. 2002) .................... 1

*Complete Bus. Sols. Grp., Inc. v. Boreal Water Collection Inc.*,
2017 WL 5652572 (Pa. Ct. Com. Pl. Nov. 02, 2017) .................... 12, 14

*Complete Bus. Sols. Grp., Inc. v. La Rosa Greenhouse, LLP*,
2016 WL 3857179 (Pa. Ct. Com. Pl. July 13, 2016) .................... 12

*Complete Bus. Sols. Grp., Inc. v. Suess*,
2019 WL 2637731 (E.D. Pa. June 26, 2019) .................... 12

*Denton v. Hernandez*,
504 U.S. 25 (1992) ........ 12

*F.T.C. v. On Point Global LLC*,
2020 WL 5819809 (S.D. Fla. Sept. 30, 2020) ........ 11

*Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*,
2019 WL 1244294 (S.D.N.Y. Mar. 18, 2019) ........ 14

*Gallop v. Cheney*,
642 F.3d 364 (2d Cir. 2011) ........ 11

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) ........ 3

*Hartford Fire Ins. Co. v. Orient Overseas Containers Lines,*
230 F.3d 549 (2d Cir. 2000) ........ 15

*Hinds Cnty., Miss. v. Wachovia Bank N.A.*,
953 F. Supp. 2d 495 (S.D.N.Y. 2013) ........ 1

*In re Higgins*,
270 B.R. 147 (Bankr. S.D.N.Y. 2001) ........ 18, 19

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018) ........ 14

*In re Merrill Lynch Ltd. P'ships Litig.*,
154 F.3d 56 (2d Cir. 1998) ........ 4

*In re Trilegiant Corp., Inc.*,
11 F. Supp. 3d 82 (D. Conn. 2014) ........ 4, 5, 6

*Katzman v. Victoria's Secret Catalogue*,
167 F.R.D 649 (S.D.N.Y. 1996) ........ 4

*Kropelnicki v. Siegel*,
290 F.3d 118 (2d Cir. 2019) ........ 17

*LCS Grp., LLC v. Shire LLC*,
2019 WL 1234848 (S.D.N.Y. Mar. 8, 2021) ........ 10

*Lich v. Watson*,
567 F. App'x 689 (11th Cir. 2014) ........ 7

*Martin Hilti Family Tr. v. Knoelder Gallery, LLC*,
386 F. Supp. 3d 319 (S.D.N.Y. 2019) ........ 3, 10

*Matusovsky v. Merrill Lynch*,
186 F. Supp. 2d 397 (S.D.N.Y. 2002) ........ 13

*McKithen v. Brown*,
626 F.3d 143 (2d Cir. 2010) ........ 16

*Ministers & Missionaries Benefit Bd. v. Snow*,
26 N.Y.3d 466 (N.Y. 2015) ........ 14

*MLSMK Inv. Co. v. JP Morgan Chase & Co.*,
651 F.3d 268 (2d Cir. 2011) ........ 7, 9

*Monahan v. New York City Dep't of Corrections*,
214 F.3d 275 (2d Cir. 2000) ........ 18

*Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*,
165 F. Supp. 2d 514 (S.D.N.Y. 2001) ........ 15

*New Y-Capp, Inc. v. Arch Capital Fundings, LLC*,
2019 WL 4805897 (S.D.N.Y. Sept. 29, 2019) ........ 16

*Oriska Ins. Co. v. Avalon Gardens Rehab. & Health Care Ctr., LLC*,
2019 WL 4195267 (N.D.N.Y. Sept. 4, 2019) ........ 14

*Phillips v. Audio Active Ltd.*,
494 F.3d 378 (2d Cir. 2007) ........ 14

*Press v. Primavera*,
685 F. Supp. 3d 216 (S.D.N.Y. 2023) ........ 11

*RA Global Services, Inc. v. Avicenna Overseas Corp.*,
843 F. Supp. 2d 386 (S.D.N.Y. 2012) ........ 18

*Rosenshein v. Meshel*,
688 F. App'x 60 (2d Cir. 2017) ........ 6

*Rotella v. Wood*,
528 U.S. 549 (2000) ........ 4

*SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al.*,
No. 20-CV-81205 (S.D. Fla. September 7, 2021) ........ 11

*SEC v. Zandford*,
535 U.S. 813 (2002) ........ 9

*Sierra Rutile Ltd. v. Bomar Res., Inc.*,
1992 WL 402961 (S.D.N.Y. Aug. 20, 1992) ........ 15

*Sterling v. Stewart*,
158 F.3d 1199 (11th Cir. 1998) ....................11

*Stevenson v. Thornburgh*,
2024 WL 645187 (S.D.N.Y. Feb. 14, 2024) .................... 4, 7, 8

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) .................... 9

*Tech. Opp. Grp., Ltd. v. BCN Telecom, Inc.*,
2019 WL 4688628 (S.D.N.Y. Sept. 25, 2019) .................... 4, 6

*Tripoint Glob. Equities, L.L.C. v. Fasolino*,
2013 WL 5677126 (S.D.N.Y. Oct. 18, 2013) .................... 15, 16, 18

*Walter E. Heller & Co. v. Video Innovations, Inc.*,
730 F.2d 50 (2d Cir. 1984).................... 14

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*,
2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016) .................... 10

*Zohar CDO 2003–1, Ltd. v. Patriarch Partners, LLC*,
286 F. Supp. 3d 634 (S.D.N.Y. 2017) .................... 3, 8, 9

**Statutes**

15 Pa. C.S. § 1510.................... 13

15 U.S.C. § 78j.................... 7

18 U.S.C. § 1964.................... 7, 8

41 P.S. § 201.................... 12

**Rules**

Federal Rule of Civil Procedure 12 .................... 6

Defendants GEMJ Chehebar GRAT, LLC, Josef Chehebar, and Isaac Shehebar (the "Chehebar Defendants") file this Memorandum of Law in support of their Motion to Dismiss the Complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Dissatisfied with their treatment in the Securities and Exchange Commission's ("SEC") pending enforcement action against Complete Business Solutions Group, Inc. ("CBSG") and insisting that the court-appointed Receiver in the SEC action is "brazenly collect[ing] upon . . . unlawful debts," Plaintiffs seek to circumvent the SEC and the Receiver through class action civil RICO claims against CBSG's alleged co-conspirators. ECF No. 1 ¶¶ 4, 12, 228. This lawsuit is necessary, Plaintiffs maintain, because they have no "hope of justice through the SEC Action given the Receiver's untenable bias against the true victims" of CBSG's scheme. ECF No. 1 ¶ 249.

As alleged in Plaintiffs' Complaint (and the SEC's Amended Complaint for Injunctive and Other Relief that Plaintiffs attach to their Complaint, *see* ECF No. 1-18),[1] CBSG was in the business of making opportunistic, short-term loans to small businesses that it funded "through unregistered securities offerings." ECF No. 1-18 ¶ 1. CBSG refers to the loans it makes to small business as "merchant cash advances" ("MCA Agreements"). ECF No. 1 ¶ 9; ECF No. 1-18 ¶ 41. Most of the MCA Agreements carried interest rates of more than 95%. ECF No. 1-18 ¶ 46; *see* ECF No. 1 ¶ 58. CBSG, the Plaintiffs allege, solicited, funded, serviced and collected upon usurious loans and committed wire fraud through electronically mailing the MCA Agreements and

[1] "A court may take into account any written instrument attached to the complaint, as well as statements and documents incorporated in the complaint by reference without converting a motion to dismiss into one for summary judgment." *Hinds Cnty., Miss. v. Wachovia Bank N.A.*, 953 F. Supp. 2d 495, 496 n.1 (S.D.N.Y. 2013) (alterations adopted) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)).

utilizing ACH debits to draw on those loans. ECF No. 1 ¶¶ 9, 158. Plaintiffs are small businesses and owners who entered into the MCA Agreements with CBSG. ECF No. 1 ¶ 1.

To fund the MCA Agreements, CBSG "raise[d] investor money through unregistered securities offerings" in the form of "promissory notes . . . offered . . . to the investing public directly and through a network of sales agents." ECF No. 1-18 ¶¶ 2, 48; ECF No. 1 ¶¶ 41, 52, 219. Because investor returns were generated by the interest small businesses paid on the MCA Agreements, the success and profitability of the investment turned on CBSG lending money to small businesses who paid back loans with interest and did not default on the loans. *See* ECF No. 1-18 ¶ 154. Thus, to attract investors, CBSG falsely represented to prospective investors that, among other things, it had "rigorous standards" and "the best underwriting in the industry" and that it had a "1% loan default rate." ECF No. 1-18 ¶¶ 163, 185. CBSG's scheme resulted in the SEC bringing claims for violations of federal securities laws. ECF No. 1-18 ¶ 1.

According to Plaintiffs, the Chehebar Defendants assisted CBSG by establishing contact with potential investors in order to raise money that CBSG used to fund the loans it made to small businesses. ECF No. 1 ¶¶ 10, 222–27, 540. The Chehebar Defendants allegedly "raised hundreds of millions of dollars for [CBSG] to use for the explicit and knowing purpose of funding usurious loans with annual interests rates of at least 105% to victimized small business across the United States." ECF No. 1 ¶ 44.

Plaintiffs allege that CBSG and its officers, "collection enforcer," and outside "marketing arm" are a RICO enterprise (the "CBSG RICO Enterprise"). ECF No. 1 ¶ 157. The CBSG RICO Enterprise's common goals were to (1) solicit, fund, service and collect upon usurious loans; and (2) commit wire fraud through the electronic mailing of MCA Agreements and utilizing ACH

debits to draw on the loans. ECF No. 1 ¶ 158. The Chehebar Defendants, Plaintiffs allege, "were knowing and material co-conspirators in the Enterprise's dual aims." ECF No. 1 ¶ 228.

## II. LEGAL STANDARD

"On a motion to dismiss, a court must take 'factual allegations in the complaint to be true and draw all reasonable inference in the plaintiff's favor.'" *Zohar CDO 2003–1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 642 (S.D.N.Y. 2017) (alterations adopted) (quoting *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009)). "To state a legally sufficient claim, the complaint must allege 'enough facts to state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers only 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "If the plaintiff 'has not nudged his claims across the line from conceivable to plausible, the complaint must be dismissed.'" *Id.* (alteration adopted) (quoting *Twombly*, 550 U.S. at 570).

"To establish a conspiracy to violate the civil RICO statute pursuant to 18 U.S.C. § 1962(d)[,] plaintiff must prove (1) that there existed a conspiracy to commit acts that, if successful, would constitute a substantive civil RICO violation; (2) that defendant agreed to join in, and knowingly participated in, that conspiracy; and (3) that defendant acted in furtherance of the conspiracy in some manner (although not necessarily by the commission of any RICO predicate acts himself)." *Martin Hilti Family Tr. v. Knoelder Gallery, LLC*, 386 F. Supp. 3d 319, 340 (S.D.N.Y. 2019) (citation omitted).

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D 649, 655 (S.D.N.Y. 1996) (citation omitted). "Courts generally approach RICO claims with caution, understanding that Congress's goal in enacting the RICO statute was to prevent legitimate businesses from becoming infiltrated by organized crime, although the statute's reach is not limited to mobsters." *Stevenson v. Thornburgh*, 2024 WL 645187, at *9 (S.D.N.Y. Feb. 14, 2024) (citation omitted). "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* (citation omitted).

## III. ARGUMENT

### A. Plaintiffs' RICO Claims Are Barred by the Statute of Limitations

Plaintiffs' RICO claims are time barred because they were filed more than four years after they discovered or should have discovered that they were injured by paying "hundreds of millions of dollars in improperly collected criminally usurious loan payments." *See* ECF No. 1 ¶¶ 261, 529. Plaintiffs' allegations make clear that they discovered or should have discovered this RICO injury—and the statute of limitations on their RICO claims therefore began to run—well before December 28, 2019, four years before they filed their complaint on December 28, 2023.

The limitations period for a civil RICO claim is four years and begins to run "when the plaintiff discovers or should have discovered the RICO injury." *In re Merrill Lynch Ltd. P'ships Litig.*, 154 F.3d 56, 58 (2d Cir. 1998); *see Tech. Opp. Grp., Ltd. v. BCN Telecom, Inc.*, 2019 WL 4688628, at *7 (S.D.N.Y. Sept. 25, 2019) ("[D]iscovery of the injury, not discovery of the other elements of a claim, is what starts the clock . . . ." (quoting *Rotella v. Wood*, 528 U.S. 549, 555 (2000)); *In re Trilegiant Corp., Inc.*, 11 F. Supp. 3d 82, 106 (D. Conn. 2014) ("In the Second

Circuit, actual knowledge of the fraudulent scheme is not necessary; an objective standard is used to impute knowledge to the victim when sufficient 'storm clouds' are raised to create a duty to inquire. . . . Importantly, the storm warnings need not detail every aspect of the alleged fraudulent scheme, but must suggest to a person of ordinary intelligence the probability of fraudulent activity." (internal citation and quotation marks omitted). "An objective standard applies to inquiry notice, and the Court may determine whether plaintiffs were on notice as a matter of law." *Broccoli v. Ashworth*, 2024 WL 1199549, at *3 (S.D.N.Y. Mar. 20, 2024) (citation omitted).

Each Plaintiff's allegations establish that their injury occurred before December 28, 2019 and that each Plaintiff should have discovered their RICO injury before December 28, 2019. In particular, Plaintiff Gelato on Hudson LLC d/b/a Haagen Dazs and Plaintiff RKDK entered into an MCA Agreement not later than 2014, which was personally guaranteed by Plaintiff Shah, *see* ECF No. 1 ¶¶ 289–93; Plaintiff Asia Star Broadcasting entered into an MCA agreement not later than December 6, 2017, *see id.* ¶ 297, and Plaintiff B and T Supplies, Inc. entered into an MCA Agreement not later than May 15, 2015, which Plaintiff Odzer and Plaintiff Azrak guaranteed, *see id.* ¶ 473. Each Plaintiff alleges that they were charged criminally usurious interest rates under those MCA Agreements. *See id.* ¶¶ 288–93, 297–301, 473–77. Accordingly, the date of each Plaintiff's injury is the date the Plaintiff entered into the MCA Agreement. *See In re Trilegiant Corp.*, 11 F. Supp. 3d at 104–06 (concluding that the date of the plaintiffs' RICO injuries was the date when the plaintiffs were enrolled in the defendant's "membership programs" and "were shortly thereafter charged monthly fees for the . . . memberships"). And to the extent Plaintiffs attempt to rely on their allegations concerning the CBSG RICO Enterprise's wire fraud or unlawful debt collection after December 28, 2019, "such allegations do not cure the statute of limitations issue" because they "relate to the same core RICO injury," *see Broccoli*, 2024 WL 1199549, at *5

—that is, "improperly collected loan payments," ECF No. 1 ¶ 529. *See Rosenshein v. Meshel*, 688 F. App'x 60, 63 (2d Cir. 2017) ("[W]e conclude that the separate-accrual rule is inapplicable here because . . . [plaintiff's] injuries occurred when he made the allegedly fraudulent investments. The multiple foreclosures that occurred through 2011 did not constitute new and independent injuries; rather, they were merely symptoms of [plaintiff's] pre-existing injuries and, therefore, have no bearing on the limitations analysis or on our conclusion that [plaintiff's] RICO claims accrued no later than 2008."); *Broccoli*, 2024 WL 1199549, at *5 ("[A]ny contentions regarding Defendants' conduct as to the alleged scheme [within the statute of limitations period] is simply derivative of the core injury sustained, and therefore, is not a new and independent injury that would restart the limitations period.") (internal citation and quotation marks omitted); *Tech. Opp. Grp.*, 2019 WL 4688628, at *7 ("Courts in the Second Circuit routinely hold that subsequent payments in furtherance of a single scheme are not new and independent injuries.") (collecting cases).

Plaintiffs' allegations also establish that they should have discovered their RICO injuries before December 28, 2019. Again, each Plaintiff alleges that they were charged criminally usurious interest rates under each MCA Agreement. *See* ECF No. 1 ¶¶ 288–93, 297–301, 473–77. Thus, Plaintiffs were on notice that they were being charged criminally usurious interest rates under the MCA Agreements and therefore had discovered or should have discovered their RICO injuries upon being charged those rates. *See In re Trilegiant Corp.*, 11 F. Supp. 3d at 107 (concluding plaintiffs should have discovered their RICO injuries when the plaintiffs "received credit card or debit account statements accurately reflecting the amounts charged for the membership programs shortly after enrolling in the programs").

Accordingly, Plaintiffs' RICO claims should be dismissed as time-barred.

**B. The PSLRA Bars the Plaintiffs' RICO Claims**

Plaintiffs' RICO claims are barred by Section 107 of the Private Securities Litigation Reform Act ("PSLRA"), known as the "RICO Amendment." The RICO Amendment provides that "no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962." 18 U.S.C. § 1964(c). Plaintiffs allege that the Chehebar Defendants "marketed and solicited the Investor Defendants to fund the usurious MCA Agreements" through unregistered, fraudulent "securities offerings." ECF No. 1 ¶¶ 10, 41, 236. Because the collection of unlawful debt and wire fraud alleged by Plaintiffs was undertaken "in connection with" the fraudulent purchase or sale of securities, the RICO Amendment precludes Plaintiffs' RICO claims. *See Stevenson*, 2024 WL 645187, at *19 ("Under Section 10(b) [of the Securities Exchange Act of 1934], the determination of whether conduct is actionable as securities fraud focuses on whether the fraudulent conduct is 'in connection with the purchase or sale of any security.'" (quoting 15 U.S.C. § 78j(b));

"The RICO Amendment was intended . . . to prevent a plaintiff from pleading other specified offenses, such as mail or wire fraud, as predicate acts under civil RICO if such offenses are based on conduct that would have been actionable as securities fraud." *See Stevenson*, 2024 WL 645187, at *18 (cleaned up); *see MLSMK Inv. Co. v. JP Morgan Chase & Co.*, 651 F.3d 268, 277 (2d Cir. 2011) ("We conclude that section 107 of the PSLRA bars civil RICO claims alleging predicate acts of securities fraud, even where a plaintiff cannot itself pursue a securities fraud action against the defendant."); *see also Lich v. Watson*, 567 F. App'x 689, 693 (11th Cir. 2014) ("[C]ourts have applied the RICO bar in § 1964(c) broadly, regardless of whether the plaintiff explicitly relied upon securities fraud as a predicate act or even had standing to pursue a securities fraud claim."). The RICO Amendment "was designed to eliminate the possibility that litigants

might frame their securities claims under a mail or wire fraud claim, eliminate the so-called treble damage blunderbuss of RICO in securities fraud cases, and prevent litigants from using artful pleading to boot-strap securities fraud cases into RICO cases." *Stevenson*, 2024 WL 645187, at *18 (cleaned up). "Thus, a plaintiff may not circumvent the RICO Amendment's reach on the basis that the alleged conduct—like aiding and abetting another party's securities fraud—is not formally recognized by the securities laws." *Zohar CDO 2003–1, Ltd.*, 286 F. Supp. 3d at 643. "Put differently, if the alleged conduct could form the basis of a securities fraud claim against <u>any</u> party—be it against, or on behalf of, the plaintiff, defendants or a non-party—it may not be fashioned as a civil RICO claim." *Id.* at 644.

There can be no dispute that Plaintiffs "rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962," *see* 18 U.S.C. § 1964(c), because the SEC brought an enforcement action for securities fraud based on the CBSG RICO Enterprise's scheme. *See* ECF No. 1 ¶ 174. As the SEC alleged, the CBSG RICO Enterprise "operate[d] a scheme wherein they raise[d] investor money through unregistered securities offerings," to "fuel" the loans CBSG made to small businesses. ECF No. 1-18 ¶¶ 2, 65, 73. And as Plaintiffs allege, the Chehebar Defendants "marketed and solicited" investors to fund the usurious MCA Agreements. ECF No. 1 ¶ 10. Plaintiffs' allegations demonstrate that an integral component of the CBSG RICO Enterprise's scheme included the fraudulent sale of unregistered securities.

Thus, Plaintiffs' civil RICO claims are based on the same alleged scheme which is at the heart of the SEC Action. "[A] civil RICO claim derived from the same allegations as an SEC enforcement action is vulnerable to dismissal under the RICO Amendment since the SEC is the regulatory agency principally tasked with rooting out securities fraud." *Zohar CDO 2003-1, Ltd.*,

286 F. Supp. 3d at 646. Despite Plaintiffs' effort to circumvent the RICO Amendment by pleading collection of unlawful debt and wire fraud as predicate offenses, any contention that this alleged conduct was not "in connection with" the purchase or sale of securities completely ignores the hard reality that the conduct was part and parcel of the CBSG RICO Enterprise's "web of unregistered, fraudulent securities offerings." ECF No. 1-18 ¶ 1; *see Zohar CDO 2003-1, Ltd.*, 286 F. Supp. 3d at 650–51 ("Zohar takes pains to avoid using the term 'securities' in the Complaint, and to the extent securities are involved, paints a picture in which they are tangentially involved in the scheme to defraud. . . . But this Court cannot ignore allegations that an integral component of that scheme . . . included . . . actions coinciding with the purchase or sale of securities."). The fraudulent securities offerings and the alleged collection of unlawful debt and wire fraud were not independent events—the collection of unlawful debt and wire fraud were undertaken to keep the CBSG RICO Enterprise's scheme alive and were therefore "in connection with" the purchase or sale of securities. *See MLSMK Inv. Co.*, 651 F.3d at 277 n.11 ("[C]onduct undertaken to keep . . . [the] scheme alive is conduct undertaken in connection with the purchase and sale of securities." (citation omitted)); *Swartz v. KPMG LLP*, 476 F.3d 756, 761 (9th Cir. 2007) (affirming dismissal of civil RICO claim as barred by the RICO Amendment because the "securities sales and [the alleged] fraudulent practices were not independent events" (quoting *SEC v. Zandford*, 535 U.S. 813, 820 (2002)); *Bald Eagle Area Sch. Dist. v. Keystone Fin. Inc.*, 189 F.3d 321, 330 (3d Cir. 1999) (holding that the RICO Amendment precluded a civil RICO claim based on a Ponzi scheme that was accomplished by the purchase and sale of securities and which was "at the heart of this RICO action"). Plaintiffs' RICO claims are barred by the RICO Amendment and should therefore be dismissed.

**C. Plaintiffs Have Failed to Allege Predicate RICO Acts**

Plaintiffs' RICO claims fail because Plaintiffs have not alleged "a conspiracy to commit acts that, if successful, would constitute a substantive RICO violation." *See Martin Hilti Family Tr.*, 386 F. Supp. 3d at 339. Plaintiffs' RICO claims are predicated on the CBSG RICO Enterprise's wire fraud and collecting unlawful debt. ECF No. 1 ¶¶ 10, 60. But Plaintiffs' allegations, the exhibits attached to the Complaint, and judicially noticeable court documents establish that the CBSG RICO Enterprise did not conspire to commit wire fraud or collect unlawful debt because the MCA Agreements are either (1) bona fide sales of accounts receivable, or (2) loans not subject to usury restrictions under Pennsylvania law. Accordingly, Plaintiffs' RICO claims should be dismissed. *See LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, at *9–11 (S.D.N.Y. Mar. 8, 2021) (dismissing civil RICO claim because plaintiff had "not sufficiently alleged a predicate crime"); *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, 2016 WL 1298987, at *10 (S.D.N.Y. Mar. 31, 2016) (dismissing civil RICO claim because the plaintiffs "fail[ed] to adequately plead any RICO predicate act").

1. <u>The MCA Agreements are bona fide sales of accounts receivable</u>

Plaintiffs' allegations that the MCA Agreements were actually "usurious loans . . . fraudulently represented to be agreements to purchase receivables," ECF No. 1 ¶ 184, do not pass the *Twombly* plausibility threshold because the United States District Court for the Southern District of Florida has authorized its Receiver to "re-commence[] ACH and debit activity in accordance with the MCA and other collection efforts to enforce the terms of the MCA." *See* August 22, 2020 Letter from Receiver to Merchants, *SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al.*, No. 20-CV-81205 (S.D. Fla.), ECF No. 556-7 at 3 4 ("**In sum, the Merchant continues to be obligated to pay Par Funding the full amount owed under the**

**MCA. Failure to remit payment in a timely manner may result in the Receiver bringing a lawsuit on behalf of Par Funding against the Merchant to enforce payment.**"). As Plaintiffs allege, the Receiver has commenced numerous such lawsuits to enforce the terms of the MCA Agreements and collect payment from merchants like Plaintiffs. ECF No. 1 ¶ 251 ("The SEC Receiver has knowingly stepped into the shoes of CBSG and is presently collecting on the indisputably unlawful debt by **continuing to debit victim merchant's accounts pursuant to the MCA Agreements Defendants funded that those merchants entered into with CBSG in order to gain more funds for the purpose of paying himself and investors like Defendants who conspired with CBSG to fund these usurious loans.**"); *e.g.*, Receiver's Motion to Lift the Litigation Injunction to Allow Commencement of Collection Proceedings, *SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al.*, No. 20-CV-81205 (S.D. Fla. September 3, 2021), ECF No. 745; Order Granting the Receiver's Motion to Lift the Litigation Stay to Allow Commencement of Proceedings, *SEC v. Complete Business Solutions Group, Inc. d/b/a Par Funding, et al.*, No. 20-CV-81205 (S.D. Fla. September 7, 2021), ECF No. 747.[2]

Plaintiffs' allegation that the United States District Court for the Southern District of Florida's Receiver, who is "a 'neutral officer of the Court,'" *see F.T.C. v. On Point Global LLC*, 2020 WL 5819809, at *2 (S.D. Fla. Sept. 30, 2020) (quoting *Sterling v. Stewart*, 158 F.3d 1199, 1201 n.2 (11th Cir. 1998)), is collecting on "indisputably unlawful debt" with the approval of a United States District Judge is "clearly baseless." *See Gallop v. Cheney*, 642 F.3d 364, 368 (2d Cir. 2011) ("A court may dismiss a claim as 'factually frivolous' if the sufficiently well-pleaded

[2] "Courts in this District routinely take judicial notice, on a motion to dismiss, of public filings like this, including filings made on court dockets." *Press v. Primavera*, 685 F. Supp. 3d 216, 224 (S.D.N.Y. 2023); *see Berlin v. Jetblue Airways Corp.*, 436 F. Supp. 3d 550, 568 n.1 (S.D.N.Y. 2020) ("Docket sheets are public records of which a court may take judicial notice . . . to establish the fact of such litigation and related filings." (citations omitted)).

facts are 'clearly baseless'—that is, if they are 'fanciful,' 'fantastic' or 'delusional.'" (quoting *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992)); *Burke v. Verizon Commc'ns, Inc.*, 2019 WL 13146782, at *10 (S.D.N.Y. Mar. 29, 2019) ("This Court is not obligated to entertain 'unsubstantiated' and 'frivolous' allegations." (quoting *Gallop*, 642 F.3d at 368)). Indeed, other courts have interpreted CBSG's MCA Agreements and concluded "that the transaction between the parties was not a loan." *Complete Bus. Sols. Grp., Inc. v. Boreal Water Collection Inc.*, 2017 WL 5652572, at *2 (Pa. Ct. Com. Pl. Nov. 02, 2017); *Complete Bus. Sols. Grp., Inc. v. La Rosa Greenhouse, LLP*, 2016 WL 3857179, at *2 (Pa. Ct. Com. Pl. July 13, 2016) (rejecting merchant's argument "that the Merchant Agreement should be voided because the interest charged thereunder by CBSG . . . 'constitutes a usurious loan transaction'"); *accord Complete Bus. Sols. Grp., Inc. v. Suess*, 2019 WL 2637731, at *5 (E.D. Pa. June 26, 2019) (denying petition to strike/open judgment against merchant on the basis of usurious loans).

Thus, because Plaintiffs cannot plausibly allege that the MCA Agreements are usurious loans, Plaintiffs have failed to allege that the CBSG RICO Enterprise committed wire fraud or collected unlawful debt in connection with the MCA Agreements. Plaintiffs' RICO claims against the Chehebar Defendants should therefore be dismissed.

2. <u>Even if construed as loans, the MCA Agreements do not violate applicable usury laws</u>

Plaintiffs' RICO claims fail because, even accepting as true Plaintiffs' allegations that the MCA Agreements are loans rather than bona fide sales agreements, the MCA Agreements are not subject to usury limitations under Pennsylvania law and cannot, therefore, support Plaintiffs' allegations of collection of unlawful debt or wire fraud. *See* 41 P.S. § 201(b)(3). Pennsylvania also prohibits corporations or individuals guaranteeing a corporate loan from asserting usury as a

defense to action. *See* 15 Pa. C.S. § 1510(a); *see also All Purpose Fin. Corp. v. D'Andrea*, 235 A.2d 808, 811 (Pa. 1967) (prohibiting individual guarantor of corporate loan from asserting usury defense). Because Plaintiffs' RICO claims hinge on construing the MCA Agreements as business loans—which are exempt from Pennsylvania usury restrictions—Plaintiffs' RICO claims fail as a matter of law.

Recognizing that their claims fail under Pennsylvania law, Plaintiffs assert that Florida law should apply. ECF No. 1 ¶¶ 483–95. But Plaintiffs' allegations cannot rewrite the plain language of the MCA Agreement, which they attach to their complaint. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 607 F. Supp. 2d 500, 502 (S.D.N.Y. 2009) ("Where a conclusory allegation in the complaint conflicts with a statement made in a document attached to the complaint, the document controls and the allegation is not accepted as true."); *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002) ("If a plaintiff's allegations are contradicted by [documents attached to the complaint as exhibits], those allegations are insufficient to defeat a motion to dismiss."). The MCA Agreements include a Pennsylvania choice-of-law provision:

> **CHOICE OF LAW.** This Purchase Agreement and all related documents, and all matters arising out of or relating to this Purchase Agreement and the relationship of the Parties hereto, whether sounding in contract, tort, equity, or law, regulation, statute or rule, are governed by, and construed in accordance with, the laws of the Commonwealth of Pennsylvania, without giving effect to the conflict of law provisions thereof to the extent that such principles or rules would require or permit the application of the laws of any jurisdiction other than those of the Commonwealth of Pennsylvania.

ECF No. 1-5 ¶ 28; *see* ECF No. 1 ¶ 138.i. (alleging that the MCA Agreements included "A Pennsylvania choice-of-law provision"). As one Pennsylvania court has explained, the MCA Agreements "specifically and unambiguously stated that Pennsylvania law shall govern without regards to the applicable principles of conflicts of law" and therefore Pennsylvania law governs

disputes arising from the MCA Agreements. *Complete Bus. Sols. Grp., Inc. v. Boreal Water Collection Inc.*, 2017 WL 5652572, at *2 n.15.

Plaintiffs cannot avoid the MCA Agreements' unambiguous choice-of-law provision through stylized claims or allegations of fraud. "[I]n the absence of a strong countervailing public policy, the parties to litigation may consent by their conduct to the law to be applied." *Flatiron Acquisition Vehicle, LLC v. CSE Mortg. LLC*, 2019 WL 1244294, at *6 (S.D.N.Y. Mar. 18, 2019) (quoting *Walter E. Heller & Co. v. Video Innovations, Inc.*, 730 F.2d 50, 52 (2d Cir. 1984)). "Courts have repeatedly rejected attempts by parties to plead their way around the enforcement of an otherwise applicable forum selection clause. [Plaintiff's] decision to invoke RICO does nothing to change this result." *Oriska Ins. Co. v. Avalon Gardens Rehab. & Health Care Ctr., LLC*, 2019 WL 4195267, at *7 (N.D.N.Y. Sept. 4, 2019); *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 388 (2d Cir. 2007) ("federal courts have routinely rejected Phillips' suggestion that a claim arising under a law of the United States is exempt from provisions governing disputes between contracting parties. . . . [I]t is inappropriate in the present context to depend solely on the legal labels used by plaintiff to decide if his case arises out of the contract.").

Plaintiffs' RICO claims do not preclude the application of the MCA Agreements' choice-of-law provision. For example, in *Tripoint Glob. Equities, L.L.C. v. Fasolino*, the plaintiff brought claims for civil RICO and fraud based on defendant's misrepresentations in securing a loan. Considering the agreement's choice of law provision and Kansas' other sufficient contacts[3] to the

[3] The court has more recently questioned the propriety of conducting any "sufficient contacts" analysis "in light of the New York Court of Appeals' admonition that 'New York courts should not engage in any conflicts analysis where the parties include a choice-of-law provision in their contract.'" *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 596 n.176 (S.D.N.Y. 2018) (quoting *Ministers & Missionaries Benefit Bd. v. Snow*, 26 N.Y.3d 466 (N.Y. 2015)).

loan agreement, the court applied Kansas law and found the loan not usurious. "New York law is clear in cases involving a contract with an express choice-of-law provision: Absent fraud or violation of public policy, a court is to apply the law selected in the contract as long as the state selected has sufficient contacts with the transaction." 2013 WL 5677126, at *3 (S.D.N.Y. Oct. 18, 2013) (quoting *Hartford Fire Ins. Co. v. Orient Overseas Containers Lines,* 230 F.3d 549, 556 (2d Cir. 2000)); *see also BMR & Assocs., LLP v. SFW Cap. Partners, LLC*, 92 F. Supp. 3d 128, 135 (S.D.N.Y. 2015) (characterizing the requisite "fraud" described in *Fasolino* as allegations that the choice-of-law provision's "incorporation into the agreement was the result of fraud or overreaching"). In *Nasik Breeding & Rsch. Farm Ltd. v. Merck & Co.*, the court enforced a choice-of-law provision on the plaintiff's New Jersey RICO claim, recognizing that "the courts of this Circuit have routinely enforced similar choice of law provisions even when a party challenges the contract as fraudulent or claims of fraudulent inducement exist." 165 F. Supp. 2d 514, 526 (S.D.N.Y. 2001). And in *Sierra Rutile Ltd. v. Bomar Res., Inc.*, the court found an arbitration clause enforceable, even as to plaintiff's RICO claims, where "[i]t cannot be disputed that the RICO claims here arise out of and relate to the parties' contract." 1992 WL 402961, at *2 (S.D.N.Y. Aug. 20, 1992).

Here, Plaintiffs' RICO claims hinge on construing the MCA Agreements as business loans. ECF No. 1 ¶ 16. The broad language contained in the MCA Agreements, covering "all matters arising out of or relating to this Purchase Agreement and the relationship of the Parties hereto, whether sounding in contract, tort, equity, or law, regulation, statute or rule," demonstrates Plaintiffs' willingness to be bound by Pennsylvania law. Because Plaintiffs' claims wholly "arise out of" the MCA Agreements, the choice-of-law provision governs, and Pennsylvania law applies. Accordingly, Plaintiffs' RICO claims against the Chehebar Defendants fail because they have not

alleged that the CBSG RICO Enterprise engaged in wire fraud or collection of unlawful debt in connection with the MCA Agreements.

**D. Plaintiffs' RICO Claims Are Barred by *Rooker-Feldman* Doctrine**

Plaintiffs cannot circumvent the confessions of judgment validly entered and enforced in state court. Under the *Rooker-Feldman* doctrine, federal courts lack subject matter jurisdiction in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review of those judgments." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010) (internal quotation marks omitted). The doctrine applies where "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiffs federal suit commenced." *Id.* at 154.

The confessions of judgment entered against Plaintiffs in state court are akin to final judgments. *Fasolino*, 2013 WL 5677126, at *9 (comparing confessions of judgment to consent decrees and recognizing that both carry the stature of final judgments) (citing *Canfield v. Elmer E. Harris & Co.*, 252 N.Y. 502 (N.Y. 1930)); *see also New Y-Capp, Inc. v. Arch Capital Fundings, LLC*, 2019 WL 4805897, at *4 (S.D.N.Y. Sept. 29, 2019) (where a "contract end[s] in final judgment, the *Rooker-Feldman* doctrine will likely control, as this court will not entertain any efforts by Plaintiffs to relitigate state court final judgments").

First, Plaintiffs lost in state court when confessions of judgment were entered against them. The Complaint alleges that the named plaintiffs and the putative class plaintiffs are parties against

whom "nearly 2,500 confessions of judgment" have been entered, with over 1,100 filed in New York and thousands of others "across the United States." ECF No. 1 ¶¶ 46–47, 122.

Second, the confessions of judgment entered in state court allegedly harmed Plaintiffs. Plaintiffs complain that the confessions of judgment are a principal cause of their supposed injuries, and they allege that they have already sought to have them overturned. ECF No. 1 ¶¶ 47, 264.

Third, Plaintiffs ask this Court to review, and reject, thousands of confessions of judgment entered in state courts across the country. Specifically, in setting forth the "common questions" to be adjudicated by this Court to establish Rule 23(b)'s elements of commonality and predominance, Plaintiffs include: "Whether the Enterprise violated judgment collection laws of Florida or various other States in its use of confessions of judgment against the National Class." ECF No. 1 ¶ 508.f. In addition, in their prayer for relief, Plaintiffs seek a declaration that "the MCA Agreements funded by Defendants and entered into between the Enterprise and the Class members . . . are void." ECF No. 1 at 107. However, many (if not most) of the MCA Agreements have already been enforced by state court judgments.

Fourth, every confession of judgment Plaintiffs attack was entered before the filing of the Complaint. Entertaining such claims here "would effectively declare the state court judgment fraudulently procured and thus void," an outcome *Rooker-Feldman* was created to avoid. *Kropelnicki v. Siegel*, 290 F.3d 118, 129 (2d Cir. 2019). Plaintiffs cannot artfully dodge every confession of judgment simply by initiating a federal suit. Plaintiffs' claims are barred.

### E. Plaintiffs' RICO Claims Are Barred by the Doctrine of *Res Judicata*

*Res judicata* prohibits plaintiffs from using federal claims as vehicles to overturn or seek damages based on prior state court debt collection judgments. The doctrine provides that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 284 (2d Cir. 2000) (internal quotation marks omitted). In other words, parties cannot assert "a later claim arising out of the same factual grouping as an earlier litigated claim even if the later claim is based on different legal theories or seeks dissimilar or additional relief." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

*Res judicata* applies where (1) the previous action was adjudicated on the merits; (2) the party against whom the doctrine is invoked or someone in privity was a party to the previous action; and (3) the claims at issue were or could have been raised in the prior action. *RA Global Services, Inc. v. Avicenna Overseas Corp.*, 843 F. Supp. 2d 386, 389 (S.D.N.Y. 2012).

Here, the confessions of judgment entered against Plaintiffs in state court are final adjudications on the merits. *Fasolino*, 2013 WL 5677126, at *9. Further, all Plaintiffs were party to a confession of judgment entered against them in state court. ECF No. 1 ¶¶ 46–47. Finally, the confessions of judgment could have been raised in the state court or Receivership proceedings, and Plaintiffs' claims are only proper in those fora. "A confession of judgment '[s]tands in much the same position as one by stipulation or consent and is a conclusive adjudication of all matters embraced in it and a bar to any subsequent action on the same claim.'" *In re Higgins*, 270 B.R. 147, 156 (Bankr. S.D.N.Y. 2001) (quoting *Canfield,* 252 N.Y. at 505. The confessions of judgment constitute Plaintiffs' explicit agreement to the validity of the MCA Agreements and serve as a final judgment on the MCA Agreements. *Id.* at 157. "As a result, this Court is prohibited under the Full

Faith and Credit Act from looking behind an enforceable judgment to consider the usury defense asserted by the [Plaintiffs]." *Id.* Plaintiffs are barred from relitigating claims previously decided by the appropriate state courts.

## IV. CONCLUSION

For all the reasons stated above, the Court should dismiss Plaintiffs' RICO claims against the Chehebar Defendants.

Dated June 10, 2024

Respectfully submitted,

s/ *Marshall Dore Louis*

Marshall Dore Louis
*Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
100 S.E. Second Street, Suite 2800
Miami, FL 33131
TEL: (305) 539-8400
FAX: (305) 539-1307
E-MAIL: mlouis@bsfllp.com

*Attorney for Defendants GEMJ Chehebar GRAT, LLC, Josef Chehebar, and Isaac Shehebar*