**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| B AND T SUPPLIES, INC. d/b/a B AND T SUPPLY d/b/a BIGGEST BOOK.COM, *et al.*, *individually and on behalf of those similarly situated*, Plaintiffs, | Case No. 1:23-11241-GHW-HJR |
| -v- | |
| GEMJ CHEHEBAR GRAT, LLC, JOSEF CHEHEBAR, and ISAAC SHEHEBAR Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**


I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY ..................................... 1

II. LEGAL STANDARD ........................................................................................ 4

III. ARGUMENT ................................................................................................. 5

A. Collateral Estoppel Was Unavailable On Defendants' Prior Motion to Dismiss.... 5

B. The December 16 Order and January 7 Mandate Give Preclusive Effect to the June 26 Order ........................................................................................ 7

C. Plaintiffs Are Collaterally Estopped from Arguing That the MCA Agreements Are Not Bona Fide Sales of Accounts Receivable........................................................ 9

IV. CONCLUSION............................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........ 4

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 4

*Cardiosom, L.L.C. v. United States*
115 Fed. Cl. 761 (2014) ........ 6

*Harris v. Mills*,
572 F.3d 66 (2d Cir. 2009) ........ 4

*Katzman v. Victoria's Secret Catalogue*,
167 F.R.D 649 (S.D.N.Y. 1996) ........ 5

*LCS Grp., LLC v. Shire LLC*,
2019 WL 1234848 (S.D.N.Y. Mar. 8, 2021) ........ 9

*Lummus Co. v. Commonwealth Oil Ref. Co.*
297 F.2d 80 (2d Cir. 1961) ........ 9

*Martin Hilti Family Tr. v. Knoelder Gallery, LLC*,
386 F. Supp. 3d 319 (S.D.N.Y. 2019) ........ 5, 9

*Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*
2019 WL 3940218 (S.D.N.Y. July 29, 2019) ........ 7, 9

*Stevenson v. Thornburgh*,
2024 WL 645187 (S.D.N.Y. Feb. 14, 2024) ........ 5

*Walker v. Gormley*
1993 WL 78071 (S.D.N.Y. Mar. 17, 1993) ........ 6

*Washington v. New York City Dep't of Edu.*
740 F App'x 730 (2d Cir. 2018) ........ 7

*Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*,
2016 WL 1298987 (S.D.N.Y. Mar. 31, 2016) ........ 10

*Zohar CDO 2003–1, Ltd. v. Patriarch Partners, LLC*,
286 F. Supp. 3d 634 (S.D.N.Y. 2017) ........ 4

**Rules**

Fed. R. Civ. P. 12(g)(2) .................................................................................................... 5

Defendants GEMJ Chehebar GRAT, LLC, Josef Chehebar, and Isaac Shehebar (the "Defendants" or the "Chehebars") file this Memorandum of Law in support of their Motion to Dismiss the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. This is the second Motion to Dismiss filed by the Chehebars in this matter. Ordinarily, such a motion would be barred by Federal Rule of Civil Procedure 12(g)(2). However, as explained below, because this Motion raises a defense that was not available to the Chehebars at the time they filed their earlier motion, it is permitted by the Rules of Civil Procedure.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The facts alleged in Plaintiffs' Amended Complaint are more thoroughly described in Defendants' initial motion to dismiss, ECF No. 44. As relevant here: Dissatisfied with their treatment in the Securities and Exchange Commission's ("SEC") pending enforcement action against Complete Business Solutions Group, Inc. ("CBSG") (the "Receivership Action")[1] and insisting that the court-appointed Receiver in the Receivership Action is "collect[ing] and extort[ing] sums of money" from them, *see* ECF No. 38 ¶¶ 141–44, 174–76, Plaintiffs seek to circumvent the SEC and the Receiver through class action civil RICO claims against CBSG's alleged co-conspirators.

According to Plaintiffs, the Chehebars provided $48 million in "seed money" to CBSG to fund the MCA Agreements and "sought to reap millions of dollars from their willful and knowing participation in [CBSG's] illegal loansharking scheme." *Id.* ¶¶ 7–9. The Chehebars, Plaintiffs allege, were thus "co-conspirators" in a RICO Enterprise (the "CBSG RICO Enterprise"). *Id.* ¶¶ 48, 203. The Chehebars allegedly funded the CBSG RICO Enterprise "by injecting necessary

[1] *See Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, No. 9:20-cv-81205-RAR (S.D. Fla. July 24, 2020) ("*SEC v. CBSG*").

capital to fund . . . the criminally usurious loans issued to small business merchants" and "agreed to conspire with the [CBSG RICO] Enterprise in its goal of collecting unlawful debt through the use of MCA Agreements that Defendants were explicitly told would be funded with their capital." *Id.* ¶¶ 55, 200. Plaintiffs, on behalf of purported classes of "similarly situated" individuals and small businesses, assert a single claim against the Chehebars for conspiring to violate the civil RICO statute pursuant to 18 U.S.C. § 1962(d). *Id.* ¶¶ 198–207.

As Plaintiffs allege, "the SEC filed an action against CBSG in the Southern District of Florida and thereafter on July 31, 2020 that court appointed the receiver." *Id.* ¶ 142. According to the SEC, CBSG "raise[d] investor money through unregistered securities offerings" in the form of "promissory notes . . . offered . . . to the investing public directly and through a network of sales agents." ECF No. 44-1 ¶¶ 2, 48. Because investor returns were generated by the interest small businesses paid on the MCA Agreements, the success and profitability of the investment turned on CBSG lending money to small businesses who paid back loans with interest and did not default on the loans. *See id.* ¶ 154. Thus, to attract investors, CBSG falsely represented to prospective investors that, among other things, it had "rigorous standards" and "the best underwriting in the industry" and that it had a "1% loan default rate." *Id.* ¶¶ 163, 185. CBSG's scheme resulted in the SEC bringing claims for violations of federal securities laws. *Id.* ¶ 1. As the SEC alleged, the CBSG RICO Enterprise "operate[d] a scheme wherein they raise[d] investor money through unregistered securities offerings," to "fuel" the loans CBSG made to small businesses. *Id.* ¶¶ 2, 65, 73. And as Plaintiffs allege, the Chehebars "assist[ed] [CBSG] in establishing contact with potential Investors" to raise funds for the MCA Agreements and "received a share of the Enterprise's profits." ECF No. 38 ¶ 11; ECF No. 38-3 §§ 2.(a)(1), 7.(e).

In the Receivership Action, Tourmappers North America, LLC, Julie Katz, MH Marketing Solutions Group, Inc. and Michael Heller argued that the MCA Agreements "are absolute repayable loans giving rise to the merchant's RICO claims for the collection of unlawful debt." *See* Memo. of Law in Response to Receiver's Motion to Approve Treatment of Merchant Victim Claims at 12, *SEC v. CBSG* (S.D. Fla. May 7, 2024), ECF No. 1887. The Receiver filed a response, explaining that these Plaintiffs' argument "should be dismissed as it ignores the plain language of the MCA agreements and seeks to change controlling Pennsylvania law." Receiver's Reply to Non-Party Merchants' Response in Opposition to Motion (1) to Approve Proposed Treatment of Claims and (2) for Determination of Ponzi Scheme at 3–7, *SEC v. CBSG* (S.D. Fla. May 21, 2024), ECF No. 1929. On June 26, 2024, the court agreed with the Receiver and overruled these Plaintiffs' objections. *See* Order Granting Receiver's Motion to (1) Approve Proposed Treatment of Claims and (2) For Determination of Ponzi Scheme at 36–37, *SEC v. CBSG* (S.D. Fla. June 26, 2024), ECF No. 1976 (the "June 26 Order").

On July 19, 2024, these Plaintiffs appealed the June 26 Order to the Eleventh Circuit. *See* Notice of Appeal, *SEC v. CBSG*, (S.D. Fla. July 19, 2024), ECF No. 1996. That same day, the Chehebars moved to dismiss the Amended Complaint in this action. *See* ECF No. 43. On October 30, this Court held a hearing on the Chehebars' motion to dismiss. *See* Oct. 30, 2024 Hr'g Tr. On November 14, 2024, the Eleventh Circuit dismissed for lack of appellate jurisdiction Plaintiffs' appeal of the June 26 Order because the June 26 Order was not appealable. *See Sec. & Exch. Comm'n v. Complete Bus. Sols. Grp., Inc.*, 2024 WL 4785772, at *1 (11th Cir. Nov. 14, 2024). On December 16, 2024, the court in the Receivership Action entered an order approving the Receiver's proposed distribution plan and authorizing a first interim distribution. *See* Order on Receiver's Motion to Approve Proposed Distribution Plan and to Authorize First Interim Distribution, *SEC v.*

*CBSG* (S.D. Fla. Dec. 16, 2024), ECF No. 2078 (the "December 16 Order"). On December 20, 2024, this Court issued its Report and Recommendation on the Chehebars' motion to dismiss. *See* ECF No. 55. Later, on January 6, 2025, the Eleventh Circuit issued its opinion as mandate, and the court's dismissal of Plaintiffs' appeal of the June 26 Order was entered in the Receivership Action on January 7. *See* Mandate of USCA, *SEC v. CBSG*, (S.D. Fla. Jan. 7, 2025), ECF No. 2086 (the "January 7 Mandate").

## II. LEGAL STANDARD

"On a motion to dismiss, a court must take 'factual allegations in the complaint to be true and draw all reasonable inference in the plaintiff's favor.'" *Zohar CDO 2003–1, Ltd. v. Patriarch Partners, LLC*, 286 F. Supp. 3d 634, 642 (S.D.N.Y. 2017) (alterations adopted) (quoting *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009)). "To state a legally sufficient claim, the complaint must allege 'enough facts to state a claim for relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A pleading that offers only 'labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). "If the plaintiff 'has not nudged his claims across the line from conceivable to plausible, the complaint must be dismissed.'" *Id.* (alteration adopted) (quoting *Twombly*, 550 U.S. at 570).

"To establish a <u>conspiracy</u> to violate the civil RICO statute pursuant to 18 U.S.C. § 1962(d)[,] plaintiff must prove (1) that there existed a conspiracy to commit acts that, if successful, would constitute a substantive civil RICO violation; (2) that defendant agreed to join in, and knowingly participated in, that conspiracy; and (3) that defendant acted in furtherance of the

conspiracy in some manner (although not necessarily by the commission of any RICO predicate acts himself)." *Martin Hilti Fam. Tr. v. Knoedler Gallery, LLC*, 386 F. Supp. 3d 319, 340 (S.D.N.Y. 2019) (citation omitted).

"Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device." *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D 649, 655 (S.D.N.Y. 1996) (citation omitted). "Courts generally approach RICO claims with caution, understanding that Congress's goal in enacting the RICO statute was to prevent legitimate businesses from becoming infiltrated by organized crime, although the statute's reach is not limited to mobsters." *Stevenson v. Thornburgh*, 2024 WL 645187, at *9 (S.D.N.Y. Feb. 14, 2024) (citation omitted). "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* (citation omitted).

## III. ARGUMENT

### A. Collateral Estoppel Was Unavailable On Defendants' Prior Motion to Dismiss

The present motion to dismiss is proper as it is based on a defense that was unavailable to the Chehebars at the time they filed their motion to dismiss. Federal Rule of Civil Procedure 12(g)(2) states that "a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection ***that was available to the party*** but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2) (emphasis added).

Here, the Chehebars could not assert collateral estoppel arising from the court's ruling in the June 26 Order—that the MCA Agreements are bona fide sales of accounts receivable—because, as the Eleventh Circuit's dismissal of the Plaintiffs' appeal of the June 26 Order confirms, the June 26 Order was not "a final or otherwise appealable order." *Sec. & Exch. Comm'n v.*

*Complete Bus. Sols. Grp., Inc.*, 2024 WL 4785772, at *1. It was not until (1) the Eleventh Circuit confirmed that the June 26 Order was not a final or otherwise appealable order, and (2) the court in the Receivership Action entered the December 16 Order (which is appealable, *see* 28 U.S.C. § 1292(a)(2); *Sec. & Exch. Comm'n v. Torchia*, 922 F.3d 1307, 1315 (11th Cir. 2019) (holding that "the district court's order approving the receiver's distribution plan is appealable as a collateral order")), that the Chehebars could argue that the June 26 Order had preclusive effect. *See, e.g., Walker v. Gormley*, 1993 WL 78071, at *2 (S.D.N.Y. Mar. 17, 1993) ("Since defendants' motion urging application of the doctrines of collateral estoppel and *res judicata* is based on the July 23, 1992, decision of Judge Lehner, and that decision is the subject of an appeal by plaintiff, defendants' motion for summary judgment is denied without prejudice to defendants' renewing said motion on the present papers if plaintiff does not prevail on appeal."); *see also Cardiosom, L.L.C. v. United States*, 115 Fed. Cl. 761, 766 (2014) ("Because defendant's current motion to dismiss under Rule 12(b)(1) responds to the Federal Circuit's August 2011 opinion, which issued well after defendant filed its earlier motion to dismiss, the court finds that the defenses or objections now raised in defendant's instant motion were not available to defendant in 2009, and thus are not barred from consideration by Rule 12(g).").

The Chehebars previously moved to dismiss based on the statute of limitations, the PSLRA, *Rooker-Feldman*, and *res judicata*. The Chehebars also moved based on the failure to allege predicate RICO acts, including that the MCA Agreements are bona fide sales of accounts receivable. However, the Chehebars' argument was limited to the *Twombly-Iqbal* plausibility standard, asserting that it is implausible that the Receiver in the Receivership Action was collecting on unlawful debt with the approval of a United States District Judge. *See* ECF No. 44 at 13. While the Chehebars did point to the court in the Receivership Action having rejected the Plaintiffs'

argument that the merchant cash advances were usurious loans, *see id.* at 13-14, the Chehebars were unable to assert collateral estoppel based on that ruling, as it was not a final or otherwise appealable order. As this Court acknowledged, collateral estoppel was not available on the Chehebars' prior motion to dismiss because "a preclusive final judgment" had "not occurred yet," ECF No. 55 at 24; *see also* Oct. 30, 2024 Hr'g Tr. at 8:24–9:13 (The June 26 Order was "[n]ot a final judgment on the merits. At some point it could become one, but that's not where we are now.").

Therefore, the defense of collateral estoppel was not available until when the Chehebars filed their motion to dismiss, and as a result, the Chehebars did not waive that defense under Rule 12(g)(2).

**B. The December 16 Order and January 7 Mandate Give Preclusive Effect to the June 26 Order**

The Eleventh Circuit's dismissal of Plaintiffs' appeal of the June 26 Order and the court in the Receivership Action's entry of the December 16 Order give preclusive effect to the June 26 Order and its holding that the MCA Agreements are bona fide sales of accounts receivable.

"In the Second Circuit, to successfully assert issue preclusion regarding a 'legal or factual issue,' a party must show that '(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was a full and fair opportunity to litigate the issue in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.'" *Rocky Aspen Mgmt. 204 LLC v. Hanford Holdings LLC*, 2019 WL 3940218, at (S.D.N.Y. July 29, 2019) (quoting *Washington v. New York City Dep't of Edu.*, 740 F App'x 730, 732 (2d Cir. 2018)) (alteration adopted).

Each requirement is satisfied here. The first element is satisfied because the issue—whether the MCA Agreements are criminally usurious loans—is identical in both this action and in the Receivership Action.

The second and third elements are met because this issue was actually litigated and actually decided in the Receivership Action, and Tourmappers North America, LLC, Julie Katz, MH Marketing Solutions Group, Inc. and Michael Heller had a full and fair opportunity to litigate the issue in the Receivership Action. To be sure, the court in the Receivership Action explained that it "accept[ed]" these Plaintiffs' "invitation" to rule on their claims and objections because they "filed a twenty-page response to the Claims Motion, arguing why their claims have merit and that they should be permitted to pursue their claims in other jurisdictions," "urge[d] the Court to rule on their objections to the Receiver's Claims Motion," and "adequately presented facts and evidence in support of their respective positions." *See* June 26 Order at 37. Indeed, as the Plaintiffs who appealed the June 26 Order explained to the Eleventh Circuit,

> [I]t cannot be disputed that Appellants participated in the district court action. For instance, on May 3, 2024, Appellants filed a motion for leave to file excess pages for their brief in opposition to the Receiver's motion that lead to the Bar Order, which the district court granted. On May 7, 2024, Appellants filed an opposition brief in the district court to oppose the Receiver's motion that led to the Bar Order. In issuing the Bar Order, the district court reiterated that it retained "exclusive jurisdiction" over all issues described in the Receiver's motion that led to the Bar Order and "in connection with the anticipated Distribution Motion" by the receiver. . . . Appellants participated in lower proceedings because they were invited and accepted the district court's invitation to oppose the Receiver's requested relief before the Bar Order was issued.

Exhibit A at 2–3 (citations omitted). Moreover, by submitting claims in the Receivership Action, Tourmappers North America, LLC, Julie Katz, MH Marketing Solutions Group, Inc. and Michael Heller "consent[ed] to the jurisdiction of the Court for all purposes," "agree[d] to be bound by its decisions," and "consent[ed] to be bound by the decisions of the Court as to the treatment of the

Claim in a Court-approved distribution plan." *See* Order (1) Approving Proof of Claim Form; (2) Establishing Claims Bar Date and Notice Procedures; and (3) Approving Procedure to Administer and Determine Claims at ¶ 18, *SEC v. CBSG* (S.D. Fla. Dec. 23, 2022), ECF No. 1471.

And, now that (1) the Eleventh Circuit has dismissed the appeal of the June 26 Order and issued the January 7 Mandate, and (2) the court in the Receivership Action has entered the appealable December 16 Order, the fourth element is satisfied because the resolution of Plaintiffs' objection to the validity of the MCA Agreements was necessary to support a valid and final judgment on the merits: the court's final approval of the plan of distribution and authorization of the first interim distribution in the Receivership Action. Thus, the litigation over the MCA Agreements' validity "has reached such a stage" that there is "no really good reason for permitting it to be litigated again." *See Rocky Aspen Mgmt. 204 LLC*, 2019 WL 3940218, at *3 (quoting *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961)).

**C. Plaintiffs Are Collaterally Estopped from Arguing That the MCA Agreements Are Not Bona Fide Sales of Accounts Receivable**

Plaintiffs' RICO claims fail because Plaintiffs cannot allege "a conspiracy to commit acts that, if successful, would constitute a substantive RICO violation." *See Martin Hilti Family Tr.*, 386 F. Supp. 3d at 339.

Plaintiffs' RICO claims are predicated on the CBSG RICO Enterprise's alleged collection of unlawful debt, wire fraud, extortionate credit transactions, obstruction of justice, conspiracy to obstruct justice, and perjury in connection with the MCA Agreements. *See* ECF No. 38 ¶ 62. But because Plaintiffs are precluded from relitigating the issue of the MCA Agreements' validity, Plaintiffs cannot allege predicate crimes arising from the MCA Agreements and Plaintiffs' RICO claims should therefore be dismissed. *See LCS Grp., LLC v. Shire LLC*, 2019 WL 1234848, at *9–11 (S.D.N.Y. Mar. 8, 2021) (dismissing civil RICO claim because plaintiff had "not sufficiently

alleged a predicate crime"); *Worldwide Directories, S.A. De C.V. v. Yahoo! Inc.*, 2016 WL 1298987, at *10 (S.D.N.Y. Mar. 31, 2016) (dismissing civil RICO claim because the plaintiffs "fail[ed] to adequately plead any RICO predicate act").

Thus, because Plaintiffs are precluded from relitigating the issue of whether the MCA Agreements were usurious loans, Plaintiffs have failed to allege that the CBSG RICO Enterprise committed any predicate RICO act in connection with the MCA Agreements. Plaintiffs' RICO claims should therefore be dismissed.

## IV. CONCLUSION

For all the reasons stated above, the Court should dismiss Plaintiffs' RICO claims.

Dated: January 24, 2025

Respectfully submitted,

s/ *Marshall Dore Louis*

Marshall Dore Louis
*Pro Hac Vice*
Robert G. Keefe
*Pro Hac Vice*
BOIES SCHILLER FLEXNER LLP
100 S.E. Second Street, Suite 2800
Miami, FL 33131
TEL: (305) 539-8400
FAX: (305) 539-1307
E-MAIL: mlouis@bsfllp.com
rkeefe@bsfllp.com

*Attorneys for Defendants GEMJ Chehebar GRAT, LLC, Josef Chehebar, and Isaac Shehebar*